■ MICHAEL FINDLAY, Appellant, v MARGUERITE DUTHUIT, Respondent. — Judgment, Supreme Court, New York County (Sherman, J.), entered November 17, 1980, dismissing the complaint pursuant to an order of said court entered October 31, 1980 which granted defendant's motion to dismiss the complaint for lack of personal jurisdiction, affirmed, with costs and disbursements. Appeal from the order of said court entered October 31, 1980, dismissed, without costs, as being subsumed in the judgment. Defendant, the

daughter of Henri Matisse, is a resident of France, who obtains income from sales of her late father's paintings and pursuant to copyright under the *droit moral* of French law issues certificates of authenticity for the works. In December, 1973, plaintiff, an international art dealer residing and transacting business primarily in New York City, sold a painting entitled "A Bunch of Yellow Flowers", purportedly by Matisse, to a Mrs. Englehard of New Jersey. Until 1978, the art world apparently believed the work to be authentic. In 1978, Mrs. Englehard attempted to donate the piece to the Houston Museum of Fine Arts in Texas. The museum requested an appraisal from the New York Art Dealers Association. The association advised Mrs. Englehard by letter that "[a] number of the panel members [on a panel of appraisers] were quite certain that [the piece] was not the work of Matisse, but we decided nevertheless to communicate with Madame Marguerite Duthuit, the artist's daughter, who * * * is making a catalogue raisson of her father's works and is presently 'the last word' on authenticity of works attributed to him." This letter further disclosed that defendant's opinion sought via a telephone communication made to her in Paris was to the effect that the work was a "fake". Consequently, the museum rejected the donation. Mrs. Englehard sought redress from the plaintiff who, in turn, served a summons and complaint upon the defendant in France based upon the single phone communication. Special Term, in granting defendant's motion to dismiss the complaint for lack of jurisdiction over the person of the defendant, observed that the causes of action alleged in the complaint sound primarily in defamation of character and that even assuming they plead causes other than defamation of character, the defendant's act does not serve as a predicate for long-arm jurisdiction under CPLR 302. We agree. Succinctly stated, jurisdiction in this action is alleged by a New York resident art dealer against a French citizen relating to a gift of artwork by a New Jersey resident to a Texas museum, wherein defendant, in response to a single overseas phone communication from a New York appraisal association, stated that the artwork was not authentic. In looking for the reality and the essence of the action and not its mere name, we conclude from a fair reading of the complaint that plaintiff's claims do indeed sound in defamation of character which cause is exempt from acts by a nondomiciliary which may serve as a basis for long-arm jurisdiction under CPLR 302 (subd [a], pars 2, 3). Assuming plaintiff pleaded causes of action other than defamation of character, it is clear that the single telephone communication made to defendant in France does not qualify as the transaction by defendant of business within this State (CPLR 302, subd [a], par 1) or the commission by defendant of a tortious act within this State whether in person or through an agent (see *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13, 17; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 460-464). Similarly, CPLR 302 (subd [a], par 3) does not support maintenance of jurisdiction over the defendant's person. With respect to the telephone communication it is evident that there had been no contact at all between plaintiff and the defendant and the plaintiff's name was not mentioned to the defendant during the New York Art Dealers Association's inquiry to defendant. Any injury to the plaintiff that the defendant could have foreseen was too remote or inconsequential and certainly was not direct (see *Fantis Foods v Standard Importing Co.,* 49 NY2d 317, 326-327). What is conspicuously absent is any showing of some act by which the defendant purposefully availed herself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws (cf. *Darienzo v Wise Shoe Stores,* 74 AD2d 342; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286). Plaintiff's cross motion for an order pursuant to CPLR 3211 (subd [d]) to permit discovery of the defendant as to essential facts to establish jurisdiction must be denied. It does not appear from the affidavits submitted in

opposition to defendant's motion (made pursuant to CPLR 3211, subd [a], par 8, to dismiss the complaint on the ground that the court does not have jurisdiction of the person of the defendant) that facts essential to justify opposition may exist, but cannot now be stated. On this record, it appears that plaintiff's opposition to the motion to dismiss is frivolous (cf. *Peterson v Spartan Inds.,* 33 NY2d 463). Concur — Birns, Ross, Lupiano and Silverman, JJ.

Kupferman, J. P., dissents in a memorandum as follows: If a cause of action is placed in the wrong cubbyhole, then the legal conclusion can be erroneous, which is the trouble with the majority memorandum in this matter. The defendant is the daughter of Henri Matisse, the great French painter, and issues certificates of authenticity for Matisse works pursuant to the French law *droit moral.* (Cf. Berne Convention, Paris Revision, 1971, art 6Bis; Copinger & Skone James, Copyright [Sweet & Maxwell, London, 1980], § 1829.) The specific right involved is *Droit de la Paternite,* the right of authorship and the right to prevent the artist's name from being used in conjunction with a work of art which he did not create. (Da Silva, Artists' Rights in France and the U. S., 28 Bull Copyright Society [Oct., 1980], pp 1, 28.) At the same time, she is also a major collector and seller, in the international arena and in the United States, of the works of her father for which she issues certificates of authenticity.[1] She is, therefore, in a potential conflict of interest position with respect to works of her father which are sold by rival dealers. Henri Matisse died in 1952. Under the French law of *Droit de la Suite,* there is a right to receive royalties on *future* sales of his work until 50 years after the author's death. (Feldman & Weil, Art Works: Law, Policy, Practice [Practising Law Institute, 1974], p 67; Da Silva, Artists' Rights in France and the U. S., 28 Bull Copyright Society, *id.,* p 4.) There is no such provision in the law of the United States.[2] The claim made in this case is that of unfair competition. The majority considers it a claim in the nature of defamation. It is more than that. In the law of Great Britain, prior to the British Copyright Act of 1956, false attribution of authorship was treated under the law of libel. However, under section 43 of that act, the remedy is now for passing off. (Copinger & Skone James, Copyright, *id.,* § 762.) The essence of the complaint is that the defendant attempts to manipulate the market for Matisse works by disparaging a work in the hands of a competitor. (Cf. Hatry & Katz, Comparative Advertising Law and a Recent Case Thereon, 3 Communications and the Law [spring, 1982], p 35, *et seq.*) This is not to say that the claim is justified, but it is axiomatic that we must draw every fair intendment which may be attributed to the complaint when it is challenged. (*Foley v D'Agostino,* 21 AD2d 60, 65.) The main question we have before us is whether there can be personal jurisdiction in the State of New York in a situation of this kind under the long-arm provision of CPLR 302. The so-called "single phone communication" was of such devastating effect as to be more significant than a long course of conduct, and New York, as a world art center, certainly has an interest in maintaining the credibility of the art business. (Cf. *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574, 581.) CPLR 302 (subd [a], par 3, cl [ii]) provides for in personam jurisdiction over a nondomiciliary who commits a tort outside New York causing injury in New York if the nondomiciliary "expects or reasonably should expect the act to have consequences in

1. Cf. Section 219-i of the General Business Law for the converse: "Falsifying certificates of authenticity of works of fine art. A person who, with intent to defraud, deceive or injure another, makes, utters or issues a false certificate of authenticity of a work of fine art is guilty of a class A misdemeanor."

2. The California Art Preservation Act, section 987 of the California Civil Code, while to be noted, does not affect the situation.

the state and derives substantial revenue from interstate or international commerce". Each of the criteria provided for is met in this situation. In *World-Wide Volkswagen Corp. v Woodson* (444 US 286, 297-298), the court said "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State". The fact that the defendant is an individual and not a corporation is, of course, of no significance in the formulation of the rule. While the *World-Wide* case concerned an Oklahoma statute, the New York statute is somewhat similar. As was said in *Sybron Corp. v Wetzel* (46 NY2d 197, 206), the extraterritorial conduct of the defendant which produces injury in New York is not in itself sufficient and there is in addition the requirement "that the nonresident either have reason to foresee that its actions will produce forum consequences or have enough other 'contacts' with the State so as to make the exercise of personal jurisdiction reasonable". It can be fairly assumed on this motion to dismiss that one or both of these additional factors can be established. It would be in order to cite here the case of *Saunders v Kline* (55 AD2d 887, 75 AD2d 531, mod 53 NY2d 658, mot for rearg den 54 NY2d 642), which, while a claim for unjust enrichment, has many of the overtones of the unfair competition claim presented in the case at bar in that, if the cause is sustained, it could be established that the defendant chose to enrich herself unjustly at the expense of another.