INTERNATIONAL CUSTOMS AS-SOCIATES, INC. and Leslie L. Boros, Plaintiffs,

v.

FORD MOTOR COMPANY and Ford Lio Ho Motor Company, Limited (Taiwan), Defendants.

No. 94 Civ. 7173 (JGK).

United States District Court, S.D. New York.

Aug. 8, 1995.

Lawrence R. Gelber, Beigel Schy Lasky Rifkind Goldberg Fertik & Gelber, New York City, for plaintiffs.

Steven Wolowitz, James J. McGuire, Nicholas W. Lobenthal, Mayer Brown & Platt, New York City, for defendants.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiffs, International Customs Associates ("ICA") and Leslie Boros ("Boros") have sued the defendants, Ford Motor Company ("Ford") and Ford Lio Ho Motor Co., Limited (Taiwan) ("Lio Ho") for breach of contract and quantum meruit, alleging that the defendants failed to pay for services successfully rendered on their behalf by the plaintiffs and that the defendants refused to permit the plaintiffs to perform fully services pursuant to the written contract between the parties. Jurisdiction is based on diversity of citizenship.

The defendants have moved to dismiss the complaint with respect to Ford on one of two alternative grounds: (1) pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; or (2) under the doctrine of forum non conveniens. The defendants have moved to dismiss the complaint with respect to Lio Ho on one of three alternative grounds: (1) pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; (2) pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction; or, (3) under the doctrine of forum non conveniens.

## I.

Plaintiff ICA, which has been dissolved by the State of New York for non-payment of taxes, was a New York corporation at all times relevant to this action. (Compl. ¶ 4.) ICA was in the business of offering expertise in assisting multinational corporations to reduce import costs and customs duties. (*Id.*) Plaintiff Boros was the sole shareholder, officer, director and employee of ICA. (Compl. ¶ 5.) Defendant Ford, which is engaged in the manufacturing, selling and exporting of automobiles and automotive parts, is a Delaware corporation with a principal place of business in Dearborn, Michigan. (Compl. ¶ 6.) Defendant Lio Ho is a Taiwanese corporation headquartered in Taiwan. (Compl. ¶ 7.) Lio Ho is a subsidiary of Ford and is in the business of importing automobiles and other automotive products into Taiwan, manufacturing automobiles in Taiwan and selling automotive products in Asia; Ford owns approximately seventy percent of Lio Ho. (Compl. ¶¶ 6, 7.)

ICA and Lio Ho entered into a written agreement on February 27, 1988 pursuant to which Lio Ho would pay ICA a monthly fee for up to twenty-four consecutive months contingent upon ICA's obtaining certain import duty and tax savings for Lio Ho.[1] The agreement provided that if ICA directly obtained "import duty and tax savings as measured against the Base Amounts" specified in the contract, and if ICA were the "sole cause" of the reductions in such duties or taxes, Lio Ho would pay ICA a contingent fee. (Exh. A to Compl. at ¶ 4(b).) Paragraph 4(b) of the contract provides that ICA's fee would be equal to:

25% of the after-tax import duty and tax savings [Lio Ho] actually realized for all such importations into the [Republic of China] within the first twelve months following the month in which each such duty/tax savings becomes effective, and 20% of each such after-tax duty/tax savings within the second twelve months therefrom.

---

1. While the agreement clearly was between ICA and Lio Ho, the plaintiffs, throughout their papers, refer to "the plaintiffs" and "the defendants." As discussed below, this is a thinly veiled attempt to expand the parties to the contract. "Corporation" as used in the contract is a defined term which refers to Lio Ho. Moreover, Lio Ho and ICA are the only signatories to the contract.

*(Id.)* The contract states that it became effective as of January 27, 1988. The "Base Amounts" against which any duty and tax savings were to be measured were the amounts that Lio Ho paid in duties and taxes at the time the parties executed the contract. (Exh. A to Compl. at ¶ 4(a).)

The parties do not dispute that ICA dissuaded Taiwan from implementing a ten percent duty increase on Lio Ho imports; they refer to this increase as the "upward valuation." However, while the plaintiffs contend that this entitled them to a fee under the agreement, the defendants claim that it did not. It is the defendants' refusal to pay the plaintiffs a contingency fee for avoiding the upward valuation that the plaintiffs claim constitutes a breach of the contract.

The plaintiffs allege a second breach of contract by the defendants. The plaintiffs claim that because the defendants directed them not to enlist the assistance of the United States government in securing a decrease in customs duties beyond the rates in effect in September, 1988, the defendants prevented them from earning additional fees under the contract. The plaintiffs claim that the parties to the contract understood that in performing its obligations under the contract, ICA could enlist the assistance of the United States government in securing decreased duties for Lio Ho.

Arising out of these same events, the plaintiffs also allege that the defendants are liable under a theory of quantum meruit.

## II.

■ The defendants argue that the complaint should be dismissed with respect to Ford pursuant to Federal Rule of Civil Procedure 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991). Therefore, a motion to dismiss must be denied unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995).[2] Under this standard, the complaint must be dismissed with respect to Ford for failure to state a claim upon which relief can be granted.

■ First, with respect to the contract claim, a contract cannot bind a non-party. *See, e.g., Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir.1985) (a non-signatory to a contract was not bound by a contract where the party who signed the contract was not the non-signatory's agent); *see also Crabtree v. Tristar Automotive Group, Inc.*, 776 F.Supp. 155, 166 (S.D.N.Y.1991) (Goettel, J.) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."); *Beacon Syracuse Assocs. v. City of Syracuse*, 560 F.Supp. 188, 201 (N.D.N.Y. 1983) ("Only those who are parties to a contract may be held liable for a breach of that

2. Although the plaintiffs have submitted documents outside the pleadings in opposition to the defendants' 12(b)(6) motion, the motion will not be treated as a motion for summary judgment because the parties were not given notice that the motion would be converted and, therefore, they were not given the opportunity to submit all materials pertinent to a summary judgment motion. *See* Fed.R.Civ.P. 12(b); *see also Festa*, 905 F.2d at 38 (notice of conversion from a 12(b)(6) motion to a summary judgment motion is mandatory). Accordingly, the Court has not considered the affidavits and other documents in deciding the defendants' motion under Federal Rule of Civil Procedure 12(b)(6). In any event, the defendants have not relied upon any materials outside the complaint and the contract attached to the complaint for their Rule 12(b)(6) motion. In deciding the motion, the Court has considered the complaint, as well as the written agreement, or contract, that underlies this action because it was appended to the complaint. *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference.") (citations omitted); *see also Sazerac Co., Inc. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994) (Sweet, J.) (when a plaintiff bases a claim on a written instrument and the written instrument contradicts allegations in the complaint, the document controls).

contract.") (citation omitted); *Dember Constr. Corp. v. Staten Island Mall,* 56 A.D.2d 768, 769, 392 N.Y.S.2d 299, 300 (1st Dep't 1977) ("Since [the defendant] was not a party to the contract, the complaint against it must be dismissed."). And, Ford clearly is not a signatory to the contract; rather, the contract was entered into by ICA and Lio Ho and signed by both entities' respective presidents. There is no ambiguity in the contract to support any argument to the contrary. The contract explicitly provides that Lio Ho is to pay the contingency fee to ICA. It is indisputable that this is an obligation only of Lio Ho under the contract, and that any failure to make payments under the contract, if payments were owed, was solely a failure of Lio Ho.

■ Acknowledging that Ford is not a signatory to the contract, the plaintiffs claim that Ford is a proper defendant on their breach of contract claim because the contract gave Ford express rights under the contract and imposed corresponding obligations, making Ford liable for any· breach of the contract.[3] Paragraph 5(b) of the contract, on which the plaintiffs rely for this theory of liability, provides:

> [Lio Ho] and its parent or affiliated companies may adopt the recommendations of [ICA] in any country or countries other than the [Republic of China] without the prior written consent of [ICA] and shall have no obligation to pay any fees to [ICA] in connection therewith unless the company adopting the recommendation utilizes in presentations to government authorities confidential documentation prepared by [ICA] for [Lio Ho] hereunder, in which case the Company concerned and [ICA] will negotiate a reasonable fee for the use thereof taking into account the relative efforts of [ICA] as compared to its efforts under this agreement.

(Exh. A to Compl. at ¶ 5(b).) This provision of the contract notwithstanding, Ford is not a proper defendant for the plaintiffs' breach of contract claim because the complaint does not contain any allegation that Ford used confidential documentation prepared by ICA in any presentations to government authorities. Indeed, there has been no allegation by the plaintiffs, and the complaint does not state any claim, that Ford or Lio Ho breached this provision of the contract.

■ The plaintiffs also argue that Lio Ho signed the contract as an agent for Ford. While the plaintiffs point to negotiations among Ford, Lio Ho and ICA, to documents and a provision in the contract indicating that Lio Ho was subject to Ford corporate policy and to the facts that Lio Ho is a subsidiary of Ford (and is listed on Ford's balance sheet) and that the contract between ICA and Lio Ho had to be approved by Ford, the complaint nowhere alleges facts that support the plaintiffs' argument that Lio Ho signed the agreement on behalf of Ford as an agent of Ford. *See Kashfi v. Phibro–Salomon, Inc.,* 628 F.Supp. 727, 735 (S.D.N.Y.1986) ("The test for determining whether a corporation is acting as an agent for a related corporation is the same as the test imposed under the doctrine of piercing the corporate veil."). Rather, the contract does not indicate, in any way, that Lio Ho entered into the agreement on behalf of Ford as opposed to on its own behalf. Indeed, the complaint alleges that the agreement "obligated Ford Lio Ho to pay plaintiffs a monthly fee for up to twenty-four consecutive months, contingent upon plaintiffs obtaining certain import duty and tax savings on behalf of Ford Lio Ho." (Compl. ¶ 30.) And again: "ICA would earn its contingency fee under the Agreement if it effectuated tax savings on behalf of Ford Lio Ho through its own efforts." (Compl. ¶ 32.) Parol evidence could not be introduced to contradict an essential term of the contract. Here, the identity of the contracting party who had the payment obligation is an essential term of the contract; therefore, the plaintiffs could not introduce parol evidence to prove that Ford is a party to the contract. *See Kashfi,* 628 F.Supp. at 732; *see also*

---

**3.** At oral argument, counsel for the plaintiffs explained that the plaintiffs do not contend that they can sue Ford because Ford is a third-party beneficiary to the contract. Indeed, such an argument would be unavailing. The status of an intended third-party beneficiary gives that person the right to sue; it does not give others the right to sue that person on the contract. *See Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir. 1985).

*Frishberg v. Esprit de Corp., Inc.*, 778 F.Supp. 793, 802 (S.D.N.Y.1991) (Carter, J.) ("Under [the parol evidence] rule the clear and unambiguous terms of a valid, integrated written instrument cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence.") (citation omitted), *aff'd*, 969 F.2d 1042 (2d Cir.1992).

Moreover, the complaint does not allege that Ford is the "alter ego" of Lio Ho and that the corporate veil should be pierced to reach Ford. *See, e.g., Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 271–72 (E.D.N.Y.1994) (proposed amended complaint stated a cause of action for breach of contract against a non-signatory under an alter ego veil-piercing theory); *Carrier Communications Corp. v. Cellular Tel. Enters.*, 189 A.D.2d 848, 848, 592 N.Y.S.2d 971, 971 (2d Dep't) ("[T]he appellant failed to establish that [the respondent] was the alter ego of its parent ... which would have allowed the court to pierce the corporate veil and hold a nonsignatory liable on the contracts in question...."), *leave to appeal denied*, 82 N.Y.2d 656, 624 N.E.2d 177, 604 N.Y.S.2d 47, *leave to appeal denied*, 82 N.Y.2d 657, 624 N.E.2d 177, 604 N.Y.S.2d 47 (1993). Moreover, the complaint does not provide any other basis for holding Ford liable for an alleged breach of a contract to which it is not a signatory.

■ With respect to the plaintiffs' quantum meruit claim, the defendants are correct that where there is a valid and enforceable contract, a plaintiff cannot recover on a theory of quantum meruit. *See, e.g. Stissi v. Interstate & Ocean Transp. Co. of Philadelphia*, 814 F.2d 848, 851 (2d Cir.1987) ("It is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie."); *Weinreich v. Sandhaus*, 850 F.Supp. 1169, 1182 (S.D.N.Y.) (Sweet, J.) ("It is well settled that recovery in quantum meruit is unavailable where an express contract covers the subject matter.") (citing *Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir.1988)), *amended in part on other grounds*, 156 F.R.D. 60 (S.D.N.Y.1994); *Clark–Fitzpatrick, Inc. v. Long Island R.R.*,

70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987) (no action in quasi-contract ordinarily lies where there is a valid and enforceable contract governing the subject matter); *Foss v. American Tel. & Tel. Co.*, 199 A.D.2d 668, 669, 605 N.Y.S.2d 143, 144 (3d Dep't 1993) (no cause of action for quasi-contract or quantum meruit where there was an express contract). However, alternative pleading is permitted. *See, e.g., John J. Kirlin, Inc. v. Conopco, Inc.*, No. 94 Civ. 2675, 1995 WL 15468, *2 (S.D.N.Y. Jan. 17, 1995) (Schwartz, J.) ("While a party may not recover in quantum meruit and for breach of contract for events arising out of the same subject matter, 'consistency in pleading is not required by the federal rules, [and] a party may claim alternatively on an express contract and on an implied contract.'") (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d, § 1235 at 274 (1990 & Supp.1994)).

■ Nevertheless, the complaint in this case fails to state a claim against Ford in quantum meruit because it does not contain any allegations against Ford that would support a theory of quantum meruit, even viewing all of the allegations in the light most favorable to the plaintiffs. To prevail on a claim of quantum meruit, a plaintiff must prove: (1) that the plaintiff rendered services to the defendant; (2) that the defendant accepted such services; (3) that the plaintiff expected reasonable compensation; and (4) the reasonable value of the services. *GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1170 (S.D.N.Y.1994); *see also Benevento v. RJR Nabisco, Inc.*, No. 89 Civ. 6266, 1993 WL 126424, *8 (S.D.N.Y. April 1, 1993) (Leisure, J.) ("In order to prevail on claims of unjust enrichment and quantum meruit, 'a plaintiff must prove that the defendant was enriched, and that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff.'") (quoting *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983)).[4]

4. At oral argument, the plaintiffs argued that

Ford benefits from the reduction of tariffs

Here, the complaint does not allege that ICA ever performed any services for Ford; rather, it claims that it performed services for Lio Ho. For example, the complaint alleges:

> The Agreement obligated *Ford Lio Ho* to pay plaintiffs a monthly fee for up to twenty-four consecutive months, contingent upon plaintiffs obtaining certain import duty and tax savings *on behalf of Ford Lio Ho.* ... ICA would earn its contingency fee under the Agreement if it effectuated tax savings *on behalf of Ford Lio Ho* through its own efforts.

(Compl. ¶¶ 30, 32 (emphasis added).) The complaint proceeds to allege:

> Taiwan Customs, in reliance on the presentations of Boros and ICA, rendered its Duty Memo in December, 1988, which eliminated the 10% revaluation, thereby *saving Ford Lio Ho* tens of millions of American dollars in retroactive and prospective taxes and *obligating Ford Lio Ho* to pay ICA and Boros a contingency fee under the Agreement.

(Compl. ¶ 58 (emphasis added).) And, it alleges:

> As detailed above, ICA and Boros performed their part of the Agreement by (i) achieving substantial reductions with respect to the 10% revaluation and (ii) by proceeding to avail themselves of all lawful means to obtain favorable valuations *for Ford Lio Ho.*

(Compl. ¶ 72 (emphasis added).)

 The plaintiffs' argument is that Ford is benefitted because a subsidiary saves money. But, under New York law, such an allegation does not state a claim for quantum meruit. The fact that a party benefits from performance does not, alone, make that party liable in quantum meruit. *See, e.g., Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.,* 183 A.D.2d 758, 759, 583 N.Y.S.2d 497, 498

(2d Dep't 1992) ("It is well settled that in order to recover under a theory of quasi contract, a plaintiff must be able to prove that performance was rendered for the defendant, resulting in its unjust enrichment. That [the defendants] consented to the improvements provided by the plaintiff and accepted the benefits does not render them liable to the plaintiff [absent evidence that the defendants were in privity with the other party to the agreement or that they assumed an obligation to pay].") (citations omitted); *Kagan v. K–Tel Entertainment, Inc.,* 172 A.D.2d 375, 376, 568 N.Y.S.2d 756, 757 (1st Dep't 1991) ("[T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery.") (citations omitted). While the plaintiffs point to the relationship between Ford and Lio Ho and the negotiations in which Ford participated prior to the execution of the contract, the agreement between the parties makes clear that ICA was to be paid by Lio Ho for services it performed for Lio Ho. Under these circumstances, Ford cannot be liable to the plaintiffs on a theory of quantum meruit.

Therefore, the complaint is dismissed under Federal Rule of Civil Procedure 12(b)(6) with respect to Ford for failure to state a claim upon which relief can be granted.[5]

## III.

 The defendants have moved to dismiss the complaint with respect to Lio Ho under Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court does not have personal jurisdiction over Lio Ho. The Court has "broad discretion" in deciding how to proceed with a motion to dismiss for lack

---

achieved for Lio Ho because Lio Ho is listed on Ford's consolidated balance sheet. However, this argument is really an argument that Ford is a third-party beneficiary to the contract, an argument that would not support the imposition of liability on Ford for breach of contract. *See Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir.1985).

5. Because the plaintiffs' complaint has been dismissed with respect to Ford for failure to state a claim upon which relief can be granted, it is unnecessary to consider the defendants' motion to dismiss the complaint with respect to Ford on grounds of forum non conveniens.

of personal jurisdiction, including conducting an evidentiary hearing. *CutCo Indus. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986). Because there has not been an evidentiary hearing in this case, the plaintiffs need only make a prima facie showing of personal jurisdiction over Lio Ho.[6] And, the pleadings and affidavits are to be interpreted in the light most favorable to the plaintiffs. *CT Chem. (USA) Inc. v. Horizons Int'l, Inc.,* 106 F.R.D. 518, 519 (S.D.N.Y.1985) (Sweet, J.); *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Accordingly, along with the complaint and the contract, the Court has considered the affidavit of Boros submitted by the plaintiffs in opposition to the defendants' motion and has construed it in the light most favorable to the plaintiffs. Under this standard, the complaint must be dismissed with respect to Lio Ho.

 A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over a defendant. *CutCo,* 806 F.2d at 365; *see also Hoffritz,* 763 F.2d at 57. The New York long-arm statute, which provides for jurisdiction over non-domiciliary defendants in certain circumstances, provides in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent ... transacts any business within the state....

N.Y. CPLR § 302(a)(1).[7] Under this provision, two conditions must be met for a court to have personal jurisdiction over a non-domiciliary defendant: first, the defendant must "transact business" in New York; and second, the claim against the defendant must arise out of that business activity. *CutCo,* 806 F.2d at 365. Here, there is no issue that the claim against Lio Ho arises out of the contract entered into between the parties;

rather, the issue is whether Lio Ho has transacted business in New York.

 Transacting business, under CPLR § 302(a)(1), "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." *Broad Horizons, Inc. v. Central Crude Ltd.,* No. 94 Civ. 1593, 1994 WL 623075, *2 (S.D.N.Y. Nov. 9, 1994) (Leisure, J.) (citation omitted). "A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo,* 806 F.2d at 365 (internal quotations and citations omitted). "Whether or not the contacts are of the appropriate nature must be determined by an analysis of the totality of the circumstances." *United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership,* 825 F.Supp. 594, 596 (S.D.N.Y.1993) (Conboy, J.) (citations omitted).

In arguing that this Court does not have personal jurisdiction over Lio Ho, the defendants rely extensively on *Broad Horizons.* In *Broad Horizons,* a New York plaintiff had entered into a contract with a Canadian defendant pertaining to mining claims of Canadian land. Alleging breach of contract, the plaintiff sued the defendant in New York.

In concluding that the court lacked jurisdiction over the defendant, the court in *Broad Horizons* explained:

The Contract deals with Canadian real estate. The Contract negotiations occurred via telephone and mail with [the defendant] in Canada and [the plaintiff] in New York, and the contract was executed by the parties in those respective locations. Defendant was never present in New York in connection with the Contract, nor were defendant's contacts with New York designed to permit it to conduct activities within New York. The bulk of the contractual performance by both parties focused on the development, condition, and

6. Notably, this is a case where the plaintiffs have access to the necessary materials to show personal jurisdiction—if such jurisdiction were to exist—because the basis of alleged jurisdiction is the contacts Lio Ho had with the plaintiffs in connection with the contract at issue in this case.

7. At oral argument, counsel for the plaintiffs represented that the plaintiffs do not argue that the Court has "general jurisdiction" over Lio Ho under CPLR § 301.

legal status of the mining claims, located in Canada. In sum, [the defendant] did not purposefully inject itself into New York, did not avail itself of the privilege of conducting activities in New York, and did not invoke the benefits and protection of New York laws.

*Broad Horizons*, 1994 WL 623075 at *5; *see also Wilhelmshaven Acquisition Corp. v. Asher*, 810 F.Supp. 108, 113 (S.D.N.Y.1993) (Cedarbaum, J.) (no personal jurisdiction under CPLR § 302(a)(1) where the contract negotiations took place simultaneously in New York and London and the center of gravity of the transaction was an oil refinery in Germany; "[d]efendants' correspondence, telephone calls and telefax transmissions did not project them into events taking place in New York[ ]").

Based on all of the circumstances in *Broad Horizons*, Judge Leisure concluded that the defendant "did not intend to do business in New York[ ]" and that "[t]he 'center of gravity' of the transaction [was] the development of land in Canada and not a business relationship formed with a New York company through phone and mail contact with Canada." *Broad Horizons*, 1994 WL 623075 at *3. The court found the defendant's communications from Canada with the plaintiff in New York to be "an insufficient basis" for the court to find that the defendant "project-ed itself into the New York forum." *Id.* at *4 (citing, *inter alia*, *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir.1983)). Because the communications between the parties were "merely a 'conduit to establish a contract[,]'" and not the transaction itself, the court found the communications insufficient to confer jurisdiction. *Id.* at *4 (citation omitted); *cf. Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970) (the interstate communication between the parties constituted the transaction at issue and provided a basis for jurisdiction over the nondomiciliary defendant).

In this case, an examination of all of the relevant factors indicates that Lio Ho did not conduct the kind of purposeful activity that is required to subject it to personal jurisdiction in New York. While it is relevant that the contract contained a choice of law clause indicating that New York law would apply, *see CutCo Indus., Inc.*, 806 F.2d at 366–67 (it is appropriate to give "some weight" to a choice of law provision); *Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*, 827 F.Supp. 171, 176 (W.D.N.Y.1993) (choice of law clauses do not, alone, confer jurisdiction, but they are "relevant" in determining whether a defendant has transacted business for purposes of CPLR § 302(a)(1)) [8],

---

**8.** The defendants argue that the import of the choice of law clause is that New York conflicts rules apply, requiring the application of the "grouping of contacts test." *See, e.g., Transport Properties, Inc. v. ABC Treadco, Inc.*, 589 F.Supp. 445, 447 (S.D.N.Y.1984) (Weinfeld, J.) (the law of the jurisdiction that has the greatest concern with the specific issues raised in the litigation applies); *Hormel Int'l Corp. v. Arthur Andersen & Co.*, 55 A.D.2d 905, 906, 390 N.Y.S.2d 457, 458 (2d Dep't 1977) ("With respect to both contracts and torts, the 'center of gravity', or 'grouping of contacts', theory now governs the choice of law ...") (citation omitted). The defendants argue that, under such a test, Taiwanese law applies. However, there is substantial support for the proposition that the reference to New York law in the agreement means New York substantive law, and not New York conflicts laws, applies.

For example, in *Woodling v. Garrett Corp.*, 813 F.2d 543 (2d Cir.1987), the Court of Appeals interpreted a provision in a release that stated that "the validity, effect and enforceability, as well as the rights of the parties hereto regarding this Release shall be governed, construed and interpreted solely in accordance with the laws of the State of Connecticut." *Id.* at 551 (internal quotation omitted). The court, which was sitting in diversity, consulted New York choice of law rules to determine "whether and to what extent the parties' contractual choice should be honored." *Id.* The court explained:

> When such a provision exists and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.

*Id.; see also Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir.1991) ("In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract. However, New York law allows a court to disregard the parties' choice when the 'most significant contacts' with the matter in dispute are in another state.") (citations omitted). And, in *Economu v. Borg–Warner Corp.*, 652 F.Supp. 1242 (D.Conn.), *aff'd*, 829 F.2d 311 (2d Cir.1987), the

almost every other aspect of the contract, and all of the circumstances surrounding the contract, demonstrate that there is no personal jurisdiction over Lio Ho.

First, the negotiations were not conducted in New York. Instead, they were conducted with ICA in New York and Lio Ho in Taiwan. All of the face-to-face negotiations between ICA and Lio Ho occurred in Taiwan and all other negotiations between Lio Ho and ICA were conducted by mail and by wire with ICA in New York and Lio Ho in Taiwan. Moreover, the contract was executed in Taiwan and, following the execution of the contract, all communication regarding the contract between ICA and Lio Ho was by mail or wire, again with ICA in New York and Lio Ho in Taiwan.

 Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction. *See, e.g., PaineWebber Inc. v. WHV, Inc.,* No. 95 Civ. 0052, 1995 WL 296398, *3 (S.D.N.Y. May 16, 1995) (McKenna, J.) ("Telephone calls are insignificant for purposes of jurisdiction except when defendants use the telephone to actively participate in business transactions in New York.") (citations omitted); *Standard Enters., Inc. v. Bag-It, Inc.,* 673 F.Supp. 1216, 1220 (S.D.N.Y.1987) (Sweet, J.) ("Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses."); *Current Textiles Corp. v. Ava Indus.,* 624 F.Supp. 819, 821 (S.D.N.Y.1985) (Sweet, J.) ("In general, telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under section 302(a)(1) absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New

York State.") (citation omitted); *Xedit Corp. v. Harvel Indus. Corp., Fidelipac,* 456 F.Supp. 725, 727 (S.D.N.Y.1978) (Frankel, J.) ("Under New York law, interstate negotiations by telephone are not contacts that subject a defendant to jurisdiction at the instance of the New York party receiving the communication.") (citation omitted); *L.F. Rothschild, Unterberg, Towbin v. McTamney,* 89 A.D.2d 540, 452 N.Y.S.2d 630 (1st Dep't 1982) (telephone conversations resulting in the purchase of stock by the defendant in Pennsylvania to the plaintiff, a brokerage firm, were insufficient to confer personal jurisdiction), *aff'd,* 59 N.Y.2d 651, 449 N.E.2d 1275, 463 N.Y.S.2d 197 (1983); *J.E.T. Advertising Assocs., Inc. v. Lawn King, Inc.,* 84 A.D.2d 744, 745, 443 N.Y.S.2d 745, 747 (2d Dep't 1981) (no jurisdiction under § 302(a)(1) where the contract was negotiated by phone or mail, no meetings were held in New York and all of the New York activities relating to the contract were performed by the plaintiff); *cf. Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 17–18, 256 N.E.2d 506, 508–09, 308 N.Y.S.2d 337, 340–41 (1970) (the court had personal jurisdiction over the defendant where the defendant, who was outside New York, received and conveyed bids in a New York auction over an open phone line with an agent physically present at the auction; the phone participation was sufficient because, through the phone, the defendant "projected himself" into the auction room, purposefully availing himself of the privilege of conducting activities in New York); *Rothschild v. Thompson,* 78 A.D.2d 795, 795, 433 N.Y.S.2d 6, 7 (1st Dep't 1980) (telephone and mail contact was sufficient to confer personal jurisdiction where the defendant sent checks and securities, and an agreement, to the plaintiff in New York and New York law applied to the agreement). Under the cases,

court explained that where a provision in an employment contract specified that New York law would govern any disputes arising out of the contract, that provision meant that New York substantive law, and not New York conflicts laws, applied. *Id.* at 1246; *see also Keene Corp. v. Bogan,* No. 88 Civ. 0217, 1990 WL 1864, *3 (S.D.N.Y. Jan. 11, 1990) (Mukasey, J.) (choice of law provision that stated that the contract should be governed and construed in accordance with the laws of New York, including those relating to

conflicts law, was held to mean that New York substantive law would govern so long as New York had sufficient contacts with the transaction and there was neither fraud nor a violation of public policy).

It is unnecessary to decide whether the choice of law clause would make New York or Taiwanese law applicable to this action because, even assuming that it would make New York law applicable, that would not be sufficient to confer personal jurisdiction over Lio Ho.

there is no way to characterize the correspondence between ICA and Lio Ho as sufficiently purposeful activity by Lio Ho to subject it to personal jurisdiction in New York.

Second, while the parties disagree with respect to the amount of performance that was to occur in Taiwan, it is clear that a substantial part of the performance under the contract was to occur in Taiwan because ICA was to represent Lio Ho before Taiwanese customs authorities for the purpose of obtaining lower Taiwanese duty rate classifications and lower dutiable values on Lio Ho's products. The contract was centered around activities occurring in Taiwan—ICA was to be paid a contingent fee to be determined on the basis of reductions it obtained in the duty rates, dutiable value and import duty taxes of Taiwan. (Exh. A to Compl. at ¶ 4(a).)

Third, any fees that Lio Ho became obligated to pay ICA under the agreement were to be paid in Taiwanese currency to a Taiwanese bank account. (Exh. A. to Compl. at ¶ 4(a).) It was an alleged failure to make such a payment that the plaintiffs contend constitutes a breach of contract.

Moreover, the plaintiffs' allegation that Lio Ho was an agent of Ford is jurisdictionally irrelevant. Under CPLR § 302(a), the acts of an agent may subject a foreign principal to personal jurisdiction; however, that statutory provision does not provide for the "reverse." It does not permit the acts of

a principal to be imputed to a foreign agent to confer jurisdiction over the agent. *See* CPLR § 302(a); *see also Maresca v. Holiday Inns, Inc.*, No. 92 Civ. 4550, 1993 WL 8166, *4 (S.D.N.Y. Jan. 5, 1993) (Patterson, J.); *Friedson v. Lesnick*, No. 91 Civ. 2133, 1992 WL 51543, *3 (S.D.N.Y. March 9, 1992) (Martin, J.); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1252 (S.D.N.Y.1984) (Goettel, J.); *Grove Valve & Regulator Co. v. Iranian Oil Servs., Ltd.*, 87 F.R.D. 93, 96 (S.D.N.Y.1980) (Weinfeld, J.).[9]

And, the plaintiffs' arguments regarding the plaintiffs' own contacts with New York do not provide the Court with jurisdiction, including their contention that the majority of ICA's performance under the contract would occur in New York. The appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did. *Benjamin Sheridan Corp.*, 827 F.Supp. at 176; *see also Marble Tile Imports v. Mihelich and Assocs.*, No. 92 Civ. 1934, 1993 WL 177805, *2 (S.D.N.Y. May 19, 1993) (Preska, J.) (the unilateral activity of the plaintiff does not support jurisdiction over a non-domiciliary defendant); *Laufer v. Ostrow*, 55 N.Y.2d 305, 312, 434 N.E.2d 692, 696, 449 N.Y.S.2d 456, 460 (1982) (a plaintiff may not rely solely on the plaintiff's own activity in New York for purposes of CPLR § 302).[10]

---

9. Similarly, while the plaintiffs contend that Lio Ho's affiliation with Ford subjects Lio Ho to personal jurisdiction, there is no support for such a jurisdictional premise. Under appropriate circumstances, when a foreign parent exercises such pervasive control over a subsidiary that the subsidiary is a "mere department" of the parent, courts will find that the activities of the subsidiary subject the foreign parent to personal jurisdiction. *See Porter v. LSB Indus., Inc.*, 192 A.D.2d 205, 213, 600 N.Y.S.2d 867, 872–73 (4th Dep't 1993). That is based on the fact that CPLR § 302(a) subjects a non-domiciliary to jurisdiction based on the acts of its "agents" in New York. The existence of Lio Ho's parent in New York is not the existence of Lio Ho's agent in New York.

10. Because Lio Ho's activities in New York do not constitute the transaction of business as defined by CPLR § 302(a)(1), there is no need to determine whether the assertion of jurisdiction would comport with due process. *See Asahi*

*Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (the exercise of personal jurisdiction must comport with " 'traditional notions of fair play and substantial justice.' ") (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

The plaintiffs have asked, if the Court finds that there is no jurisdiction over Lio Ho, for permission to take discovery from the defendants. While there are circumstances in which it is appropriate, in the Court's discretion, to permit a plaintiff to obtain discovery on the issue of personal jurisdiction over a defendant, *see, e.g., Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir.1975) (noting the court's discretion to permit discovery on jurisdiction in the face of a motion to dismiss); *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F.Supp. 587, 593 (S.D.N.Y.1990) (Carter, J.) (same) (citing *Grove Valve & Regulator Co., Inc. v. Iranian Oil Servs.*, 87 F.R.D. 93, 96 n. 8 (S.D.N.Y.1980) (Weinfeld, J.)), here, the plaintiffs have not made

In short, the totality of Lio Ho's activities are insufficient to provide personal jurisdiction in New York over Lio Ho. Even crediting all of the plaintiffs' allegations in the light most favorable to them, the plaintiffs have not made out a prima facie case that Lio Ho's activities rose to the level of purposeful activity needed to confer personal jurisdiction in New York under CPLR § 302(a)(1).[11]

### IV.

Therefore, the Court grants defendant Ford's motion to dismiss the complaint against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) without prejudice. The plaintiffs may serve and file an amended complaint within thirty (30) days of the entry of this Opinion and Order.[12] The Court also grants defendant Lio Ho's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

**SO ORDERED.**

a sufficient showing to justify granting such a request. The plaintiffs have represented that they do not contend that Lio Ho is subject to "general" jurisdiction based on Lio Ho's "doing business" in New York. *See* NY CPLR § 301. Instead, they have argued that it is Lio Ho's transaction of business relating to the contract at issue that subjects Lio Ho to personal jurisdiction. Therefore, the necessary materials to resist the motion to dismiss for lack of personal jurisdiction are within the knowledge of the plaintiffs. And, the plaintiffs have conceded that no one from Lio Ho ever came to New York in relation to any aspect of the contract negotiations or performance. The plaintiffs have suggested no viable basis for a finding of personal jurisdiction. *See, e.g., Findlay v. Duthuit,* 86 A.D.2d 789, 790–91, 446 N.Y.S.2d 951, 953 (1st Dep't 1982) (denying discovery); *see also Schumacher v. Sea Craft Indus.,* 101 A.D.2d 707, 707, 475 N.Y.S.2d 690, 691 (4th Dep't 1984) (no discovery permitted where the plaintiff set forth "no basis for the unsubstantiated statements on which he attempts to found long-arm jurisdiction").

11. Because there is no personal jurisdiction over Lio Ho, it is unnecessary to address the Rule 12(b)(6) aspect of the defendants' motion that seeks dismissal of the complaint with respect to Lio Ho for failure to state a claim upon which relief can be granted. The defendants have argued that ICA was not entitled to payment under the contract because ICA never succeeded in obtaining a reduction in duties below the Base Amounts contained in the agreement. It also is not necessary to address the defendants' motion to dismiss on grounds of forum non conveniens.

12. *See, e.g., Crabtree,* 776 F.Supp. at 168 (granting the plaintiffs leave to replead a breach of contract claim against a non-signatory to the contract.)