**SAZERAC COMPANY, INC., Plaintiff,**

v.

**Ferdie A. FALK, and Robert Baranaskas, Defendants.**

**No. 94 Civ. 2330 (RWS).**

United States District Court,
S.D. New York.

Aug. 18, 1994.

Kirkland & Ellis, New York City (Terrence J. Galligan, of counsel), for plaintiff.

Baer Marks & Upham, New York City (Howard Graff, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants Robert Baranaskas ("Baranaskas") and Ferdie Falk ("Falk") (collectively the "Defendants") move to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in this diversity action brought by Plaintiff Sazerac Company, Inc. ("Sazerac") or, in the alternative, the Defendants seek to join Takara Shuzo Co., Ltd. ("Takara") as a necessary party, pursuant to Rule 19 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Defendants' motion to dismiss is granted.

### The Parties

Sazerac is a corporation organized and existing under the laws of the State of Louisiana, with its primary place of business in New Orleans. Sazerac distributes alcohol beverage products throughout the United States.

Falk is a citizen of the State of Florida and Baranaskas is a citizen of the State of New York. The Defendants were the majority owners of Age International Inc. ("Age"), a Kentucky Corporation with offices in Roslyn, New York, which distributes alcohol beverage products throughout the United States, through AADC Holding Company, Inc. ("AADC"), a New York Corporation. Falk owned 35.1% and Baranaskas owned 33.9% of the stock of AADC.

Takara, a Japanese Corporation, is the exclusive distributor of Age products in Japan and was the minority shareholder in AADC at the time the alleged events occurred giving rise to this action. Takara owned approximately 22.5% of the stock of AADC and had a contractual right of first refusal to purchase the remaining 77.5%.

### Prior Proceedings and Facts

On April 30, 1991, Takara purchased approximately 22.5% of the stock in AADC. Under the terms of that sale, Takara had a 30–day right of first refusal to purchase all other shares of AADC stock.

On July 10, 1992, Defendants Baranaskas and Falk entered into an agreement (the "Heublein Agreement") to sell their majority interest in AADC, the parent company of Age, with Heublein Inc. ("Heublein") for approximately $20,000,000. Heublein, a subsidiary of the multinational corporation Grand Metropolitan Incorporated, is in the business of importing and distributing alcoholic beverages such as Bailey's Irish Cream. On August 4, 1992, written notice of Heublein's offer, and AADC's intention to accept, was sent to Takara. On September 3, 1992, Takara gave notice to AADC that it intended to exercise its right of first refusal to purchase the stock. Apparently, Heublein informed Takara that it intended to proceed with the purchase which was due to close on September 4, 1992. In the absence of assurances to the contrary from AADC, Falk or Baranaskas, Takara then sought a temporary restraining order in the United States Court for the Southern District of New York.

On September 4, 1992, Takara, as the minority shareholder in AADC, filed suit in the Southern District seeking to enjoin Baranaskas and Falk from selling their shares of AADC to Heublein on the theory that it was guaranteed a right of first refusal in its shareholder's agreement with Baranaskas and Falk. On September 4, 1992 the Honorable John S. Martin granted a temporary

restraining order prohibiting the transfer of any shares of AADC to Heublein and a September 9 hearing date was set for a determination as to whether a preliminary injunction should issue. (Thomas Decl.; Defs.' Mot.Ex. C.)

On September 21, 1992, a stipulation and consent order (the "Consent Order") was "So Ordered" by the Honorable Kevin T. Duffy. The Consent Order stated: (1) that Takara had sent a letter on September 3, 1992 to AADC regarding Takara's right of first refusal of the sale of AADC stock; (2) that Takara tendered to AADC a proposed Share Purchase Agreement ("SPA") which provided a closing date of September 30, 1992; and (3) that the closing date could be extended until October 15, 1992, provided there were reasonable grounds for such notice; (4) that AADC, Baranaskas, Falk and Heublein all agreed to the provisions of the closing date in the SPA; and (5) that if Takara did not purchase the outstanding stock of AADC by September 30 or give notice extending the Closing Date, that Baranaskas and Falk would sell the stock to Heublein in accordance with the terms of the Heublein Agreement. (*See* Consent Order; Defs.' Mot. to Dismiss, Ex. B.)

On September 30, 1992, Takara exercised its right of first refusal and purchased the outstanding stock in AADC in accordance with the terms of the SPA—allegedly the "mirror image" of the Heublein Agreement. Sazerac contends that at the same time the SPA was executed between the Defendants and Takara, a "concurrent" sale by Takara to the Sazerac of certain "Age Assets" of AADC and its subsidiaries was formalized in an Asset Purchase Agreement (the "APA") on September 3, 1992. The APA has not been attached to the Complaint and its terms and parties are unknown.

Prior to the closing, Age was the primary operating company owned by AADC. Sazerac alleges that the Defendants were aware that Takara intended to sell the Age Assets and certain AADC subsidiaries to Sazerac immediately upon the execution of the SPA by them and Takara. According to Sazerac, the Defendants thus knew of the representations made in connection with the sale of AADC stock were for the benefit of Takara as well as Sazerac.

Takara apparently did transfer the Age Assets to Sazerac, although Takara retained ownership of the corporate entity Age and the trademarks to certain of the Age Assets. In addition, Takara appears to have entered into a long term licensing agreements with Sazerac relating to the use of those trademarks. Sazerac, in turn, agreed to indemnify Age and Takara for certain assumed liabilities.

Sazerac now seeks to file suit against Defendants Falk and Baranaskas for violating warranties allegedly made to Takara under Section 6.8 of the SPA by failing to disclose certain pre-existing obligations concerning: (1) the Sterling Stone and W & W contracts' liquidated damages provisions which required Age to pay an amount equal to the sum of monthly commissions paid to those parties over a year; (2) the Missouri Conrad Liquor Co. distribution contract, an obligation allegedly not disclosed by the Defendants prior to the closing of the SPA; and (3) certain of the Age employee benefit plans later discovered to be out of compliance with the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, contrary to the Defendants' alleged representations otherwise and Section 6.11(b) of the SPA with Takara.

As a result, Sazerac alleges the following four legal counts in its Complaint: (1) that the Defendants intentionally misrepresented and failed to disclosure the obligations binding the Age Assets; (2) that the Defendants negligently misrepresented certain facts to Sazerac, under a theory that due to the "integrated" nature of the transactions between Sazerac and Takara and between Takara and the Defendants, there was a "functional equivalent of contractual privity" between the Defendants and Sazerac; and (3) that Sazerac is a third party beneficiary to the SPA between the Defendants and Takara and should accordingly be reimbursed for its losses due to the alleged misrepresentations and non-disclosures; and (4) a declaration should be issued by the Court that any liabilities incurred by Sazerac due to the Defen-

dants' failure to disclose certain facts should be honored by the Defendants themselves. Sazerac seeks $200,000 in damages.

The Defendants contend that the action should be dismissed as the Sazerac's claims hinge on the unsupported theory that there is a legal relationship between Sazerac and the Defendants. In the alternative, the Defendants move for joinder of Takara on the theory that it is a necessary party whose party is required for the prosecution of this action.

The motion was filed on May 5, 1994. Oral argument on the motion was heard on June 22, 1994, and it was considered fully submitted at that time.

### Discussion

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in their favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here are taken from the Plaintiffs' Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motions.

■ Rule 12(b)(6) also imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989)).

■ In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) mo-

tion even if it was not attached to the complaint and made a part thereof under Rule 10(c), Fed.R.Civ.P. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) *("Cortec")* (considering publicly filed disclosure documents), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991) *("I. Meyer Pincus")* (considering a prospectus).

■ Additionally, if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint. *See Feick v. Fleener,* 653 F.2d 69, 75 & n. 4 (2d Cir.1981); *United States ex rel. Sommer v. Dixon,* 524 F.Supp. 83, 85 (N.D.N.Y.1981), *aff'd per curiam,* 709 F.2d 173 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983). Following the logic of *Cortec* and *I. Meyer Pincus,* this rule also applies to the instruments supplied by the Defendants in support of their Rule 12(b)(6) motion to dismiss.

### I. Sazerac Is Not a Third–Party Beneficiary to the SPA

■ The Restatement (Second) of Contracts provides that a third party is an intended beneficiary to a contract if:

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981). "New York law follows the Restatement (Second) of Contracts § 302 (1979) in allowing a third party to enforce a contract if that third party is an intended beneficiary of the contract."[1] *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 600 (2d Cir.1991) (citing *Septembertide Publishing, B.V. v.*

---

1. Section 13.8 of the SPA states that the SPA shall be "governed by and construed in accor-

dance with the laws of the State of New York." (SPA § 13.8 at 43.)

*Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985)); *see also Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 573 (2d Cir.1991) (same).

■ The courts may look at the surrounding circumstances as well as the agreement when determining whether a third-party beneficiary exists, *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989), as "it is well-settled that the obligation to perform to the third-party beneficiary need not be expressly stated in the contract." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 573 (2d Cir.1991); *see also Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.,* 807 F.Supp. 1007, 1020 (S.D.N.Y.1992) (stating that "[a]lthough the parties' intention to benefit the third-party must be gleaned from the face of the contract, *In re Gulf Oil/Cities Service Tender Offer Litigation,* 725 F.Supp. 712, 733 (S.D.N.Y.1989), the defendant's obligation to the third-party beneficiary need not be explicitly stated in the contract itself. *Vista Co. v. Columbia Pictures, Inc.,* 725 F.Supp. 1286, 1296 (S.D.N.Y.1989).").

■ The New York Court of Appeals has stated that a third-party beneficiary must establish that he or she has a "right to enforce the contract" or "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985). *But see Strauss v. Belle Realty Co.,* 98 A.D.2d 424, 426–27, 469 N.Y.S.2d 948 (2d Dept.1983) (to enforce promise third party need not be identified in contract but need only show intent of contracting parties to benefit third party).

■ Moreover, it is not the intention of the promisor which governs whether an intended third-party beneficiary has enforceable rights under a contract. Rather, it is the expressed intent of the promisee which determines whether the beneficiary is entitled to the benefits of the agreement. *Drake v. Drake,* 89 A.D.2d 207, 209, 455 N.Y.S.2d 420, 422 (4th Dept.1982) (holding "the intention of the promisee is of primary importance, since the promisee procured the promise by furnishing the consideration therefor.") (citation omitted); *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 573 (2d Cir.1991) ("An intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance.") (citations omitted).

■ In this case, there is no indication that Sazerac was an intended, much less an express, beneficiary of the SPA. *Cf. Barnum v. Millbrook Care Ltd. Partnership,* 850 F.Supp. 1227, 1233–34 (S.D.N.Y.1994) (holding plaintiff was intended third party beneficiary). An express intent to benefit Sazerac cannot be construed from the terms of the SPA. Rather, the SPA explicitly describes itself as a non-assignable agreement:

> SECTION 13.4. *Assignment.* Neither this Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by any party to this Agreement without the prior written consent of the other parties.
>
> \*   \*   \*   \*   \*   \*
>
> SECTION 13.6. *Binding Effect.* This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns.

Similar language has been held to bar third party beneficiary claims in similar circumstances. *See, e.g., In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 725 F.Supp. 712, 733 (S.D.N.Y.1989); *Grondin v. Rossington,* 690 F.Supp. 200, 207 (S.D.N.Y.1988); *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 91 Civ. 5153, 1994 WL 17952 at *12, 1994 U.S. Dist. LEXIS 363 at **38–40 (S.D.N.Y. Jan. 17, 1994).

Even if the express anti-assignment provision of the SPA did not bar Sazerac's third party beneficiary claim, the circumstances surrounding the consummation of the SPA would. In the Complaint, Sazerac asserts

that the Defendants were aware that Takara intended to sell the Age Assets to Sazerac in a separate agreement and that this awareness conferred third party beneficiary status onto Sazerac, providing it with actionable rights under the SPA.

The circumstances surrounding the signing of the SPA, as described in the Consent Order, imply that it was originally drafted to forge an agreement between the Defendants and Heublein, and not Takara and, derivatively, Sazerac. It was only by virtue of the Consent Order that Takara was substituted for Heublein as the purchaser under the SPA, circumstances which diminish Sazerac's claim that it was a contemplated third party to the SPA.

██ Further, as a matter of law, even if the Defendants had intended to benefit Sazerac under the SPA, it is not their intent, as promisors, which matters. Rather, it is the intent of Takara, as the promisee which determines whether third party beneficiary status has been conferred. *See Barnum v. Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1234 (S.D.N.Y.1994) (citing cases). The pleadings, such that they are, do not support a determination that Takara intended Sazerac to be a third party beneficiary to the SPA.

Finally, Sazerac has also failed to allege any factual circumstances which would support its claim that it was an intended third party beneficiary. The Complaint fails to detail any meetings or cite any language from the SPA or the APA which would support its assertion of third party beneficiary status. Accordingly, in the absence of any facts supporting Sazerac's conclusory allegations, the terms of the SPA and the APA do not confirm an expressed or intended third party beneficiary status upon Sazerac, and this claim is hereby dismissed.

## II. *Sazerac Has Failed To State A Claim for Negligent Misrepresentation*

██ Under New York law, to be held liable for information negligently furnished requires privity of contract or "a relationship closely approaching it," *Williams & Sons*

*Erectors v. South Carolina Steel,* 983 F.2d 1176, 1181 (2d Cir.1993) (citing *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) (Cardozo, J.)), in what is often described as a bond that is so close as to be the "functional equivalent of contractual privity." *Id.* at 1182 (citing New York cases). In addition, New York law affixes liability when: (1) there is an awareness that the [representations] were to be used for a particular purpose; (2) a known party relied on the representation in order to further that purpose; and (3) the defendants engaged in some conduct which indicates that they understood the party had relied on the representation. *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) ("*Credit Alliance*"); *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 425, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989).

Even when viewing the allegations in the Complaint in a light most favorable to the Plaintiffs that "the transactions between Sazerac and Takara and between Takara and the Defendants," were somehow "integrated" in "nature" cannot save Sazerac's claim of negligent misrepresentations. The Complaint does not provide any factual basis that the relationship, such that it was, between the Defendants and Sazerac constituted one of buyer and seller, much less the "functional equivalent of privity." From the Consent Order, it is clear that the Defendants entered into an arms length transaction with Heublein. The later substitution of Takara for Heublein, pursuant to the Consent Order cannot act to catapult Sazerac over Takara into a surrogate contractual relationship with the Defendants.

██ Allegations that the Defendants "knew or should have known" that they had negligently made misrepresentations to Takara cannot now be extended to Sazerac. Sazerac was not a "known party" within the meaning of *Credit Alliance* at the time the SPA was negotiated with Heublein. *Cf. In re Time Warner Inc. Sec. Litig.,* 794 F.Supp. 1252, 1262 (S.D.N.Y.1992) (discussing *Credit Alliance;* stating non-privity cases may extended only where the "dealings [are] among a small number of parties known to the

defendants, and whose reliance on defendant's representations was immediate and obvious."), *rev'd on other grounds,* 9 F.3d 259 (2d Cir.1993) (upholding district court's dismissal of New York common law claims of negligent misrepresentation).

■ A claim of negligent misrepresentation against the Defendants cannot be simply transferred to Sazerac via Takara's procurement of the Consent Order substituting itself for Heublein under the terms of the SPA. Once again Sazerac fails to identify any meetings, conversations, or correspondence from the Defendants directly to Sazerac or, for that matter, Takara which would support its allegations of negligent misrepresentations. Further, the language of the SPA is devoid of any acknowledgement of the existence of Sazerac or the APA.

Accordingly, in the absence of any factual allegations in support of this Count, Sazerac's claim of negligent misrepresentation must be dismissed.

### III. Sazerac Has Failed to State a Claim for Fraudulent Misrepresentation

■ There are five elements necessary to sustain a claim in fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Department Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969).

■ A fraud claim based upon an alleged misrepresentation communicated to a third party can only withstand dismissal if the maker of the alleged misrepresentation intended or should have expected that the alleged fraudulent misrepresentation would be repeated. *See Peerless Mills, Inc. v. American Tel. & Telegraph Co.,* 527 F.2d 445, 450–

51 (2d Cir.1975) (affirming dismissal where plaintiff failed to show misrepresentation was intended to be conveyed to the plaintiff); *Chase Manhattan Bank, N.A. v. Fidata Corp.,* 700 F.Supp. 1252, 1261 (S.D.N.Y.1988) (dismissing claim where no allegation was communicated to the plaintiff or that the defendant expected it to be).

■ Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "[A]llegations[ ] which fail to specify the time, place, speaker, and sometimes even the contents of the alleged misrepresentations," lack the "particulars" required by Rule 9(b). *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986). Here, Sazerac fails to proffer any factual basis for its allegations that the Defendants made a misrepresentation to Takara, much less that they either intended or should have expected the alleged misrepresentation would be repeated to Sazerac. Indeed, Sazerac merely makes conclusory allegations that the Defendants misrepresented certain contractual provisions in their negotiations with Takara.[2] However, the Complaint fails to articulate either when or to whom such representations were made, nor does it identify meetings or negotiations tying the Defendants to the alleged misrepresentations to Sazerac or Takara.

■ In this case, Sazerac has not alleged any factual basis in support of its allegations that it reasonably relied on the Defendants' alleged misrepresentations to Takara. In order to state a claim in fraud, Sazerac "must not only reasonably believe that the representation is true, but he must also be justified in taking action in reliance thereon." *Lanzi v. Brooks,* 54 A.D.2d 1057, 388 N.Y.S.2d 946, 948 (3d Dept.1976), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977). Sazerac has failed to proffer a credible explanation as to how it could have reasonably relied upon alleged representations that were theoretically made to Takara at an unidentified time, place and manner.

---

**2.** Since the Defendants appear only to have negotiated with Takara around the right of first refusal, the alleged intentional misrepresenta-

tions, if made, must have been to Heublein, who has an even more attenuated connection with the Plaintiff.

As there is no reasonable basis for Saze-rac's claim of fraudulent misrepresentation discernable from the face of its Complaint, it is hereby dismissed.

### Conclusion

For the reasons set forth above, the Defendants' motion to dismiss this action is granted.

It is so ordered.