HONESS 52 CORP., Plaintiff,

v.

The TOWN OF FISHKILL, The Town Board of the Town of Fishkill and The Planning Board of the Town of Fishkill, Defendants.

No. 97 Civ. 6724 (WCC).

United States District Court, S.D. New York.

April 6, 1998.

---

Cuddy & Feder & Worby, White Plains, NY (Joshua J. Grauer, of counsel), for Plaintiff.

Martin, Clearwater & Bell, New York City (Gregory J. Radomisli, of counsel), for Defendants.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

This civil rights action arises out of a dispute between plaintiff Honess 52 Corp. and the Town of Fishkill (the "Town"), the Town Board of the Town of Fishkill (the "Town Board"), and the Planning Board of the Town of Fishkill (the "Planning Board")—collectively, the "Defendants"—over development of property owned by Plaintiff (the "Property"). In its complaint, Plaintiff alleges that the defendants arbitrarily and capriciously deprived it of a constitutionally protected property interest in

violation of its substantive due process rights. Plaintiff seeks redress for the defendants' alleged conduct pursuant to 42 U.S.C. § 1983 and on various state law grounds.

Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the federal claims for failure to state a claim upon which relief can be granted. Defendants also seek dismissal of the pendent state claims pursuant to 28 U.S.C. § 1367(c)(3). For the reasons discussed below, Defendants' motion is granted.

## BACKGROUND

For purposes of the motion to dismiss, the Court must accept as true the facts alleged in the complaint and appended documents. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (discussing Fed.R.Civ.P. 10(c)). To the extent, however, that the allegations in the complaint are contradicted by annexed documents, the Court need not accept the allegations as true. *See International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1255 n. 2 (S.D.N.Y.1995); *Sazerac Co. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994).

In setting out the facts underlying this dispute, the complaint reaches back in time some thirty years. The long and convoluted story begins in 1965, at which time the Town's Zoning Ordinance permitted construction of approximately 337 residential dwelling units as of right on the Property. In 1966, the Town Board amended the Zoning Ordinance to allow only 31 units (the "1966 Zoning Amendment"). This amendment was never incorporated, in writing, into the book containing the Zoning Ordinance.

In 1972, Green Mountain Estates, Inc. ("Green Mountain"), one of Plaintiff's several predecessors in interest, purchased the Property and met with the Planning Board to discuss development of 500 condominium units on the Property. It was not until this meeting that Green Mountain learned of the 1966 Zoning Amendment. In early 1973, Green Mountain filed a rezoning petition to permit construction of up to 500 units (the "1973 Rezoning Petition"). The Town Board denied the petition.

Green Mountain subsequently commenced an Article 78 proceeding in the Supreme Court of the State of New York seeking to annul and set aside the denial of the 1973 Rezoning Petition and to declare the 1966 Zoning Amendment unconstitutional. In its March 7, 1974 decision, the state court (Justice Joseph Hawkins) ruled that the Town Board had improperly denied the 1973 Rezoning Petition but that the record did not permit a ruling on the constitutionality of the 1966 Zoning Amendment. The court referred the matter back to the Town Board for reconsideration of the 1973 Rezoning Petition. (*See* March 7, 1974 Decision, attached to Compl. as Exh. A.)

In February 1975, almost one year after the state court's opinion had issued, the Town Board again denied Green Mountain's 1973 Rezoning Petition. Accordingly, Green Mountain renewed its Article 78 proceeding, seeking to have this second denial set aside and to have the 1966 Zoning Amendment declared unconstitutional. In a decision dated December 4, 1975, Justice Hawkins again concluded that the record was insufficient to determine the constitutional issues. However, given the "protracted delay" and failure to compile an adequate record that had ensued on the previous remand to the Town Board, the court ordered a trial. (*See* December 4, 1975 Decision, attached to Compl. as Exh. B.)

After a four-day bench trial before Justice James Caruso, the state court declared the 1966 Zoning Amendment unconstitutional and ordered the Town Board to rezone the Property. The court also recommended that the parties reach an agreement as to the number of units that would be permitted on the Property. (*See* July 21, 1976 Decision, attached to Compl. as Exh. C.)

In 1977, Green Mountain and the Town entered into a Stipulation of Settlement which was "so ordered" by the state court (the "1977 Stipulation"). The Stipulation set forth the rights and obligations of the respective parties and their successors with respect to the development of the Property. Specifically, the parties agreed that 337 residential units would be permitted on the Property, a

right that was to "remain constant and unimpaired until the year ending December 31, 2000," at which time the Stipulation would terminate. (1977 Stipulation, attached to Compl. as Exh. E, ¶¶ 1, 3.) However, the Town Board retained the right

> ... to determine the zoning in relation to the subject parcel in the future so long as said determination is not discriminatory as to this parcel and is part of a comprehensive plan of rezoning or redesignation for the area that encompasses East of the Fishkill Bridge and South of the Fishkill Creek .... [The Town Board also] shall have a right to make determinations in relation to the site plan ordinances and rules, subdivision regulations, road, drainage and sewer specifications so long as said determinations are not discriminatory against the property.

(*Id.* ¶¶ 3, 5.) The Stipulation provided that it would run with the land as a permanent covenant and would bind the parties' assigns and successors. (*See id.* ¶¶ 3, 9, 10–11.)

For a decade after entering the 1977 Stipulation, Green Mountain, which had bought the Property as an investment, was unsuccessful in finding a joint venture partner to develop the Property or a purchaser to buy it outright. Finally, in 1987, Ridgeview Associates ("Ridgeview"), which would become one of Plaintiff's several predecessors in interest, purchased the Property in reliance on representations by the Town and its representatives that the 1977 Stipulation was in full force and that no zoning change would be necessary to build a 337–unit residential development on the Property. Prior to the purchase, Ridgeview had posted a letter of credit in the amount of $824,000 to cover its share of the municipal sewer system upgrades that would be needed for a 337–unit development (the "Sewer LOC").

In October 1987, pursuant to the Zoning Ordinance, Ridgeview submitted an application to the Planning Board for site plan approval of a 337–unit condominium development on the Property (the "1987 Site Plan Application"). Toward the end of that month, the Planning Board, acting pursuant to the New York State Environmental Quality Review Act, N.Y. Envtl. Conserv. Law

§ 8–0101 *et seq.* ("SEQRA"), determined that an Environmental Impact Statement ("EIS") was required before it could act on Ridgeview's application. Despite its belief that the 1987 Site Plan Application was exempt from SEQRA, Ridgeview submitted a draft EIS in December 1987. After a July 1988 public hearing on the draft EIS, the Town issued a sight draft against the Sewer LOC in the amount of $660,000 which was allocated toward sewer improvements in contemplation of a 337–unit development. A few months thereafter, Ridgeview submitted a final EIS for review by the Planning Board.

In April 1989, after several public meetings, the Planning Board adopted environmental findings pursuant to SEQRA (the "SEQRA Findings") and conditionally granted Ridgeview preliminary site plan approval (the "1989 Preliminary Site Plan Approval"). The Preliminary Site Plan Approval set out some ten pages of conditions that Ridgeview would have to satisfy before receiving final approval. It also excerpted provisions of the 1977 Stipulation pertaining to the respective rights of the parties in developing the Property. (*See* 1989 Preliminary Site Plan Approval, attached to Compl. as Exh. H.) The Planning Board made clear that it still had environmental concerns regarding the proposed development, and indicated that the 1977 Stipulation prevented an optimal response to these concerns:

> [T]he Planning Board must point out that its ability to review the subject project in the normal manner pursuant to [SEQRA] was severely hampered by the Stipulation of Settlement. That is, for example, lower density alternatives were not analyzed due to the possible legal right of [Ridgeview] to 337 dwelling units on the subject property.
>
> Wherever possible, the Planning Board has, however, sought some form of mitigation of the impacts associated with the project, within the constraints to the Planning Board of the Stipulation of Settlement. Given this legal right to 337 dwelling units, greater mitigation than has been and will be required by the Planning Board cannot occur. Only if the total number of dwelling units is decreased, can

further mitigation than that required by the Planning Board take place. (SEQRA Findings, attached to Compl. as Exh. G.)

In June 1989, third parties (citizens of Dutchess County) commenced an Article 78 proceeding challenging the validity of the 1977 Stipulation and seeking to overturn the 1989 Preliminary Site Plan Approval. The Preliminary Site Plan Approval was stayed pending the outcome of the litigation; nevertheless, the Town issued another sight draft in an amount constituting the remainder of the funds available under the Sewer LOC. In April 1990, the state court (Justice Judith Hillery) dismissed the action, finding that the 1977 Stipulation was binding and that, with respect to the issue of unit density, the 1987 Site Plan Application was exempt from SEQRA.

The following June, the Planning Board granted Ridgeview final site plan approval, subject to several conditions (many of which required approvals from the Town Board) and a one-year time period within which to satisfy the conditions (the "1990 Final Site Plan Approval"). Over the course of the following year, Ridgeview and its successor in interest, H.B.R., Inc. ("HBR"), sought to satisfy the conditions. By May 1991, it became apparent to HBR that it would not be able to satisfy all of the conditions, in part because of alleged delays by the Town Board. The following month, the Planning Board granted HBR an indefinite extension of the period for compliance with the conditions.

In August 1991, the Property was taken over by the Federal Deposit Insurance Corporation (the "FDIC") as receiver for HBR's parent company. Shortly thereafter, the Town Board adopted a local law requiring the Town Board's approval of any extensions of time (within which to satisfy conditions contained in a final site plan approval) granted by the Planning Board. Despite the Planning Board's prior extension of the 1990 Final Site Plan Approval, the Town Board required the FDIC to submit another extension application.

At a January 1992 meeting between the FDIC and the Planning Board to discuss the extension application, members of the Planning Board stated that the FDIC should review the 1990 Final Site Plan Approval to consider a reduction in unit density. The following month, the Town Board considered the extension application, noted the same "issues" identified by the Planning Board at the January meeting, and voted to postpone consideration of the application.

About six weeks later, the Town Board again met to discuss the extension application. Plaintiff alleges that "the Town Board publicly feigned a recommendation to the Planning Board that the Extension Application be granted, yet privately requested that the Planning Board deny the Extension Application at its April 9, 1992 meeting." (Compl.¶ 100.) The FDIC appeared at the April 9 meeting and, allegedly in an attempt to avoid a denial of its extension application, requested that the Planning Board postpone consideration of the application and suggested a meeting to discuss possible modifications to the 1990 Final Site Plan Approval.

At a meeting later that month, the FDIC and the Town discussed a proposed agreement whereby the FDIC would alter the 1990 Final Site Plan Approval by reducing the density of development in exchange for an approved preliminary site plan which could be modified by a subsequent developer. At a subsequent meeting, the Town indicated to the FDIC that posting a $250,000 letter of credit to secure the Property's pro rata share of water district improvements proposed by the Town would enhance the Town Board's willingness to enter the proposed agreement with the FDIC.

In August 1992, the FDIC began discussions with Plaintiff regarding sale of the Property. In July 1993, after extensive discussions with the Town and prior to acquiring the Property, Plaintiff confirmed with the Town in writing that the Sewer LOC had been drawn down by the Town and that sewer capacity for 337 residential units had been made available to the Property.

After acquiring the Property, "Plaintiff soon learned that an application [to build] 337 units would only have encountered ... powerful and successful resistance,"

(Compl.¶ 114), and "came to believe that it had no choice but to seek permission to construct only" 172 dwelling units on the Property, (*id.* ¶ 113). At a March 1994 meeting to discuss Plaintiff's proposed 172–unit development (the "1994 Subdivision Application"), the Chairman of the Planning Board expressed concern that 172 units was still "a major density." (*Id.* ¶ 116.) "[I]n response to continued Town of Fishkill intransigence," Plaintiff modified its 1994 Subdivision Application by reducing the density of development to 150 units. (*Id.* ¶ 117.) The Chairman referred to this reduction as "a step in the right direction." (*Id.* ¶ 118.)

In June 1995, Plaintiff submitted a Preliminary Plat Application which sought approval for 146 dwelling units. The Planning Board referred the application to various state and municipal agencies for their review. At a September 1995 meeting, the Planning Board again expressed concern over the density of the development proposed in the Preliminary Plat Application. "[I]n response to the continued pressure," Plaintiff again revised the subdivision plans to include only 130 units. (*Id.* ¶ 125.) After reviewing the revised proposal, the Chairman of the Planning Board stated that Plaintiff's application was "headed in the right direction" and that Plaintiff could "proceed with a further detailed plan." (*Id.* ¶ 127.)

Several times during the course of the next year, Plaintiff's engineers, architects, and planners met or discussed with the Planning Board and other Town officials the detailed subdivision plans being prepared to ensure compliance with state and local laws and regulations. After an October 1996 meeting with the Planning Board, Plaintiff submitted a revised Preliminary Plat Application and detailed subdivision plans. The revised application sought approval for 131 dwelling units. Pursuant to directions of the Planning Board, Plaintiff again revised its subdivision plans to reduce the development density to 130 units. At a February 1997 meeting, the Planning Board deemed the Preliminary Plat Application complete and scheduled a public hearing for March 27. At the hearing, several members of the public voiced objections to the proposed subdivision development.

In May 1997, the Planning Board "announced that compliance with SEQRA was required," notwithstanding prior representations by the Town that SEQRA was not required for the less dense project. (*Id.* ¶ 145.) The Planning Board refused to approve or disapprove the Preliminary Plat Application until Plaintiff submitted an EIS for the 1994 Subdivision Application. Plaintiff responded by demanding that the Town Clerk, pursuant to Section 276(8) of the Town Law of the State of New York, issue a default approval certificate in light of the Planning Board's failure to act on the Preliminary Plat Application within 62 days of the March 27, 1997 public hearing. The Town Clerk refused.

Accordingly, on July 23, 1997, Plaintiff commenced an Article 78 proceeding in the Supreme Court of the State of New York. In that state court proceeding, Plaintiff sought an order compelling the Town Clerk to issue a default approval certificate on the ground that its Preliminary Plat Application was not subject to SEQRA requirements. On March 11, 1998, Justice Hillery dismissed the action, finding that the Preliminary Plat Application is subject to SEQRA on all issues other than unit density, and thus that Plaintiff must submit an EIS before the Planning Board can act on the application.

Before this most recent state court proceeding had been resolved, Plaintiff commenced the instant action on September 10, 1997 seeking redress for Defendants' allegedly unconstitutional conduct. Plaintiff claims that Defendants, through decades of obstruction and delay, have violated its substantive due process rights by arbitrarily and capriciously depriving it of a constitutionally protected property interest in constructing a 337–unit development on the Property. The complaint also contains pendent state law causes of action for unjust enrichment, prima facie tort, and breach of contract. Defendants counter by arguing that Plaintiff has failed to state a cognizable claim for violation of due process, and accordingly that the entire complaint should be dismissed.

## DISCUSSION

### I.  *Standard of Review*

When faced with a Rule 12(b)(6) motion to dismiss, "a court's task in determining the

sufficiency of a complaint is 'necessarily a limited one.'" *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The issue is not whether a plaintiff will or might ultimately prevail on its claim, but whether it is entitled to offer evidence in support of the allegations in the complaint. *Id.* Dismissal is warranted under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts, consistent with its complaint, in support of its claim that would entitle it to relief. See *id.* at 62–63 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on such a motion, the Court must accept as true all factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Id.* at 63 (citing *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

However, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994); *accord International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1255 n. 2 (S.D.N.Y.1995). Moreover, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); *accord Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997).

## II. *Substantive Due Process*

In assessing a substantive due process claim in the context of land use regulation, the Court must be "mindful of the general proscription that federal courts should not become zoning boards of appeal" to review non-constitutional land use determinations by local legislative and administrative bodies. *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996) (citing *Zahra v. Town of Sout-*

*hold,* 48 F.3d 674, 679–80 (2d Cir.1995)). Given this concern, a plaintiff asserting a substantive due process claim based on a government land use decision must sufficiently allege (1) that it has a constitutionally protected property interest, and (2) that the defendants arbitrarily or irrationally deprived it of that property interest. *See id.* at 52; *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 97, 101 (2d Cir.1992).

Before engaging in this due process analysis, however, the Court must determine whether Plaintiff's claim is ripe, and thus whether subject matter jurisdiction exists.

### A. *Ripeness*

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, —— U.S. ——, 118 S.Ct. 1257, 1258, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Ripeness doctrine's basic rationale "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas*, 473 U.S. at 580–81. A plaintiff need not "await the consummation of threatened injury to obtain preventative relief"; rather, a "claim is ripe if the perceived threat due to the putatively illegal conduct of the [defendants] is sufficiently real and immediate to constitute an existing controversy." *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

In determining whether a matter is ripe for review, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas*, 118 S.Ct. at 1258 (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)); *see also AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. Partnership*, 6 F.3d 867, 872 (2d Cir.1993). With respect to the first factor, a federal court may review a land use decision by a municipal agency only if that agency has reached a "final decision." *Southview Assocs.*, 980 F.2d at 95–97. The

rationale behind the finality requirement is that a court cannot determine whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final decision before it. *See id.* at 97. A final decision is "a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Unless such a final decision has been reached, a plaintiff's substantive due process claim is not ripe.

Defendants contend that Plaintiff's claim is not ripe because the Planning Board has not yet denied or approved the Preliminary Plat Application. They argue that a final decision cannot be reached until Plaintiff submits an EIS pursuant to SEQRA. Plaintiff counters that Defendants' delays and intransigence demonstrate that they have in effect reached a "final decision" not to recognize Plaintiff's asserted right to develop the Property (beyond, perhaps, a fraction of the density to which Plaintiff claims entitlement). Asserting that Defendants have no intention of acting on the Preliminary Plat Application before Plaintiff's rights under the 1977 Stipulation expire at the end of 2000, Plaintiff argues that any further attempts to gain Defendants' approval would be futile.

The Second Circuit appears to have recognized a futility exception to the final decision requirement in land use cases. *See Southview Assocs.,* 980 F.2d at 98–99 & n. 8 (citing *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1012 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350 n. 7, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); and *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454, *modified,* 830 F.2d 968 (9th Cir.1987)). Under this exception, certain procedures that a plaintiff normally would be required to pursue in order to receive a final determination may be excused if the plaintiff can demonstrate, by more than mere allegations, that

they would be futile. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1501 (9th Cir.1990); *Kinzli,* 818 F.2d at 1454.

Although the Second Circuit has not directly addressed the contours of the futility exception in the land use context, this Court is persuaded that Plaintiff's complaint sufficiently demonstrates a justiciable controversy. The crux of the complaint is that Plaintiff is "entitle[d] to approval of an Application for 337 units pursuant to the 1977 Stipulation," (Compl.¶ 161), and that Defendants' actions demonstrate that no such approval will be forthcoming before the expiration of Plaintiff's rights under the 1977 Stipulation. In light of the allegations of obstruction and delay, Plaintiff has sufficiently shown that the due process issue is "fit for review." *AMSAT,* 6 F.3d at 872. In addition, withholding review arguably would work a "hardship" on Plaintiff, whose rights under the 1977 Stipulation expire at the end of the year 2000. *See Texas,* 118 S.Ct. at 1258; *AMSAT,* 6 F.3d at 872.

Therefore, the Court finds that Plaintiff's substantive due process claim is ripe for adjudication.

### B. *Property Interest*

It is well-settled that a constitutionally protected property interest arises only if there is an "entitlement" to the relief sought by the property owner. *See Zahra,* 48 F.3d at 680 (citing *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir.1994). In the land use context, the entitlement test is applied "with considerable rigor" in order to prevent federal courts from becoming substitutes for state courts in their review of local land use decisions. *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.1989).[1]

---

1. The Second Circuit has noted that in the land use context, the entitlement test "balances the need for local autonomy, with recognition of constitutional protection at the very outer margins of municipal behavior. It represents an acknowledgment that decisions on matters of local concern should ordinarily be made by those whom local residents select to represent them in municipal government—not by federal courts. It also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land use decisions; in our federal system, that is the province of the state courts." *Zahra,* 48 F.3d at 680.

■ Of course, " '[p]roperty interests ... are not created by the Constitution.' " *Brady v. Town of Colchester,* 863 F.2d 205, 212 (2d Cir.1988) (quoting *Roth,* 408 U.S. at 577). Rather, constitutionally protected property interests arise from "independent source[s] such as state law." *Roth,* 408 U.S. at 577. Under certain circumstances, a protected property interest may be conferred by contract. *See Walentas v. Lipper,* 862 F.2d 414, 418 (2d Cir.1988) (citing *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir. 1988)). However, not all contract disputes give rise to a cause of action under § 1983. "There is a distinction between the breach of an ordinary contract right and the deprivation of a protectible property interest within the meaning of the due process clause." *Id.* Whether a dispute implicates state law contract issues or federal constitutional issues is determined by application of the entitlement test. *See id.* at 419.

Within the Second Circuit, the contours of the entitlement test have varied over the years. As first enunciated in the land use context, the entitlement test focused on "whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). Of importance to the Court in *Yale Auto Parts* was whether a local zoning board of appeals would have granted the plaintiffs' application if it had "properly exercised [its] wide discretion." *Id.* Because the board was authorized to consider a multitude of factors in making its determination, the Court found that "there is no assurance that if [it] had properly exercised [its] discretion [it] would have issued the requested certificates." *Id.*

One year later, in *Sullivan v. Town of Salem,* the Court revisited the *Yale Auto Parts* formulation. There, the Court stated:

By [the *Yale Auto Parts* ] standard we did not intend to remove from constitutional protection every application for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action .... On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.

805 F.2d 81, 85 (2d Cir.1986). In *Sullivan,* the municipal defendants conceded that the ground on which local officials refused to issue certificates of occupancy was not based on any legal authority. *See id.* ("No question was raised as to matters over which the building official might have discretionary authority, such as the quality of construction of the houses, their compliance with the subdivision plan, or whether they satisfied building code and zoning requirements.") Therefore, if the houses at issue did in fact meet all applicable requirements, the municipal defendants would have been without discretion to refuse to issue certificates. Accordingly, the Court reversed a grant of summary judgment and remanded to the district court "for further proceedings to determine whether in fact the houses did meet all applicable requirements" and whether the certificates were refused solely on the impermissible ground. *Id.; see also Brady,* 863 F.2d at 213–15 (reversing a grant of summary judgment and remanding for factual determinations as to whether the municipal defendants improperly denied a certificate of occupancy and revoked a building permit; whether defendants possessed discretion, and thus whether plaintiffs had a protected property interest, were issues of material fact).

In *Dean Tarry Corp. v. Friedlander,* the Court distinguished *Sullivan* on the ground that in *Sullivan,* "the unlawful requirement preventing approval of the builder's application came out of thin air." 826 F.2d 210, 213 (2d Cir.1987). In *Dean Tarry,* by contrast, the "broad discretion" exercised by the defendant planning board was, "as in *Yale Auto Parts,* ... embodied in the governing law ...." *Id.* The Court found that this wide discretion "prevented [plaintiff's] expectation of success from rising to the level of certainty required to give rise to a cognizable property right." *Id.*

In *RRI Realty Corp. v. Incorporated Village of Southampton,* the Court attempted to reconcile the varying formulations of the en-

titlement test. The Court stated that "[t]he fact that [an application] *could have been* denied on non-arbitrary grounds defeats [a] federal due process claim." 870 F.2d 911, 918 (2d Cir.1989) (emphasis added). Noting the policy reasons for applying the entitlement test "with considerable rigor," the Court continued:

> *Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case* .... Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the *opportunity* of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The 'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised.

*Id.* (emphasis added); *accord Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995); *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir.1995); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir.1994); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 101–102 (2d Cir.1992) (opinion of Oakes, C.J.). In accordance with this departure from the *Sullivan* Court's focus on an applicant's chances of success in a particular case, the *RRI Realty* Court also took issue with the suggestion in *Sullivan* and *Brady* that the existence of a protected property interest is a question of fact: "Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court." *RRI Realty*, 870 F.2d at 918; *accord Gagliardi*, 18 F.3d at 192.

The variety of formulations of the entitlement test is reflected in the parties' legal memoranda. Plaintiff invokes *Sullivan* in

arguing that because its Preliminary Plat Application (allegedly) satisfies all applicable regulations, Defendants possess no discretion with respect to the application. (*See* Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss Compl. at 33–37; Aff. of Joshua Grauer, dated Feb. 6, 1998, ¶ 6.) Plaintiff contends that Defendants' delay in approving the application is due solely to their dissatisfaction with the number of units that Plaintiff seeks to develop—an element of the application over which Defendants have no discretion. As Justice Hillery held in 1990, in determining whether SEQRA was applicable to the 1977 Stipulation: "the [Town's] approval for Ridgeview [Plaintiff's predecessor in interest] to construct 337 units on the Honess Mountain parcel was exclusively a ministerial act based on the [1977 Stipulation] and did not involve the exercise of discretion as to the number of allowable units ...." (April 17, 1990 Decision, attached to Compl. as Exh. I, at 14.)

Defendants contend that this language merely reflects the proposition, conceded by Defendants, that they did not have any discretion with respect to the number of units that would be constructed on the Property. But, Defendants argue, the 1977 Stipulation and Justice Hillery's two decisions explicitly stated that they retained discretion in other areas. Reviewing the terms of the 1977 Stipulation in her 1990 decision, Justice Hillery found that the document "reserv[ed] unto the Town of Fishkill the right to make determinations concerning site plan ordinances and rules, subdivision regulations, drainage and sewer specifications" and "the right to grant site approval for this project." (April 17, 1990 Decision at 4, 12.) In her more recent decision, Justice Hillery revisited the content of the 1977 Stipulation and elaborated on her earlier decision:

> This Court agrees with [the Planning Board] that the only issue exempt from SEQRA review under the 1977 stipulation of settlement is the maximum number of dwelling units permissible on the [Property]. Contrary to [Honess'] reading of the stipulation of settlement, its terms bifurcate the issues of maximum dwelling unit count from site plan review of all other aspects of any proposed project.... *[T]he*

*1977 stipulation imposed no mandate on the Town Board of the Town of Fishkill to approve any and all development applications up to a maximum of 337 clustered dwelling units.* Rather, the stipulation reserved the Town of Fishkill's right to exercise its discretionary review of all aspects of proposed development on the subject property, with the exception of the number of dwelling units permissible up to a maximum of 337 units. Specifically, paragraph 5 of the stipulation retains [the Town's] "right to make determinations in relation to the site plan ordinances and rules, subdivisions regulations, road, drainage and sewer specifications so long as said determinations are not discriminatory against the property."

(March 11, 1998 Decision at 7–8 (emphasis added).)

Given this discretion in several areas, Defendants argue that even without improper consideration of the unit density, approval of the Preliminary Plat Application would not be assured. In addition to the language of the 1977 Stipulation and the decisions of Justice Hillery, relevant provisions of the New York Town Law support Defendants' contention. Under Sections 276 and 277 of that law, a local planning board is vested with the authority to weigh the evidence, resolve conflicting inferences, and exercise its discretion in approving or denying approval of a subdivision plat. *See Cedarwood Land Planning v. Town of Schodack,* 954 F.Supp. 513, 524 (N.D.N.Y.1997); *In re North Greenbush Dev. Corp. v. Fragomeni,* 226 A.D.2d 854, 857, 640 N.Y.S.2d 911, 913–14 (3d Dep't 1996); *In re M & M Partnership v. Sweenor,* 210 A.D.2d 575, 576–77, 619 N.Y.S.2d 802, 803 (3d Dep't 1994); *Thomas v. Brookins,* 175 A.D.2d 619, 620, 572 N.Y.S.2d 557, 557 (4th Dep't 1991); *In re Currier v. Planning Bd. of Town of Huntington,* 74 A.D.2d 872, 872, 426 N.Y.S.2d 35, 36 (2d Dep't), *aff'd,* 52 N.Y.2d 722, 436 N.Y.S.2d 274, 417 N.E.2d 568 (1980); *see also* N.Y. Town Law §§ 276, 277 (McKinney Supp.1997–98). Given this broad discretion, which would of course be limited by the 1977 Stipulation with respect to unit density, Plaintiff's substantive due process claim must fail.

As shown above, in keeping with the mandate that federal courts should not function as zoning boards of appeal to review local land use determinations, the Second Circuit has shifted from an entitlement analysis that focuses on the probability of approval in a particular case to one that focuses on the extent of the local authority's discretion. Here, by virtue of state law the Planning Board possesses the authority to consider a host of factors in assessing Plaintiff's Preliminary Plat Application and to exercise its discretion in evaluating those criteria. Although the 1977 Stipulation limits this discretion with respect to unit density, it does not require the Planning Board to approve any particular application. The Board remains free to determine whether a given application meets the various criteria which it is authorized to consider. Accordingly, Plaintiff has not demonstrated a protected property interest and thus has failed to state a cognizable substantive due process claim.[2]

Plaintiff's allegation that its application complies with all applicable regulations and other standards is no more than a conclusory assertion that, but for the alleged denial of due process, its application would be granted. *See De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) ("A complaint which

---

2. *See Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor,* 973 F.Supp. 338, 349 (E.D.N.Y.1997) (no protected property interest in subdivision plat where New York Village Law granted local planning board discretionary approval powers); *Cedarwood,* 954 F.Supp. at 524–25 (no protected property interest in subdivision plat where New York Town Law § 276 granted local planning board discretionary approval powers); *Orange Lake Assocs., Inc. v. Kirkpatrick,* 825 F.Supp. 1169, 1178 (S.D.N.Y.1993) (same), *aff'd,* 21 F.3d 1214 (2d Cir.1994); *see also Crowley,* 76 F.3d at 52 (no protected property interest in variance where zoning regulations granted zoning board with discretionary approval powers); *RRI Realty,* 870 F.2d at 919 (no protected property interest in building permit where village code granted architectural review board discretionary approval powers); *Dean Tarry,* 826 F.2d at 213 (no protected property interest in site plan where zoning ordinance, which was subsequently invalidated, granted planning board discretionary approval power); *Yale Auto Parts,* 758 F.2d at 59–60 (no protected property interest in zoning certificate where state law granted zoning board of appeals discretionary approval powers).

consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).");  *accord Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). Moreover, this assertion is premature. The sufficiency of Plaintiff's application is a determination for the Planning Board to make within its sound discretion, and the soundness of the Planning Board's ultimate decision—including whether its determinations are "discriminatory against the [P]roperty" in violation of 1977 Stipulation, or are otherwise arbitrary in violation of state law—is a matter for the state courts.

It should be emphasized that the Court does not pass judgment on Plaintiff's allegations of arbitrary or improperly motivated conduct on the part of Defendants. Even if a defendant engages in improper conduct, a substantive due process claim will not lie in the absence of a protected property interest. *See RRI Realty*, 870 F.2d at 918–19 ("as *Yale Auto Parts* demonstrates, the plaintiff may be deemed not to have a protected property interest in the requested permit, even in a case where the denial of the permit is arbitrary"; defendant's discretion to deny plaintiff's permit application "deprived [plaintiff] of a property interest in the permit, regardless of how unlawful under state law the ultimate denial may have been"); *Yale Auto Parts*, 758 F.2d at 59–60 ("there can be no question that, according to the complaint, the defendants engaged in egregious misconduct .... However, the undisputed record is equally clear that plaintiffs were not entitled to a ... certificate of location approval as a matter of right"; "[o]ur research has failed to reveal any instance in which the absence of a fundamentally fair procedure has been held actionable under § 1983 in the absence of a showing that it deprived the plaintiff of a property or liberty interest recognized by law").

The Court also notes its concern with the allegations that Defendants appropriated several hundred thousand dollars by drawing down letters of credit posted by Ridgeview, Plaintiff's predecessor in interest, for sewer improvements in contemplation of a 337–unit development. These allegations, however, implicate questions of state law such as unjust enrichment. Resolution of such issues is the province of the state courts.

Therefore, as sympathetic as this Court may be with Plaintiff's allegations of the prolonged runaround Plaintiff and its predecessors have received from Defendants, the Court has no alternative but to dismiss the § 1983 claims and remit Plaintiff to state court for appropriate relief.

III. *Pendent Claims*

Pursuant 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim where the court has dismissed all claims over which it has original jurisdiction. In such situations, courts ordinarily should decline to exercise supplemental jurisdiction: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966);  *accord Maric v. St. Agnes Hosp. Corp.*, 65 F.3d 310, 314 (2d Cir.1995);  *Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir.1991). Here, having dismissed the § 1983 claim, the Court declines to exercise jurisdiction over the remaining pendent state claims.

### CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted and the complaint is dismissed in its entirety. An appropriate judgment shall be entered by the Clerk of the Court.

SO ORDERED.